LUTTIG, Circuit Judge,
dissenting:
Fully aware of the importance of the matter before us today, I would unhesitatingly affirm the judgment below on the essential reasoning set forth by the district court. Brzonkala v. Virginia Polytechnic & State University, 935 F.Supp. 779 (W.D.Va.1996). Judge Kiser’s lengthy opinion is an excellent legal analysis of the constitutionality of the Violence Against Women Act under Articíe I, § 8, cl.3 of the Constitution. That analysis is thorough, scholarly, and, most important, abidingly faithful to the Supreme' Court’s decision in United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The district court’s analysis describes in detail the Supreme Court’s new analytical framework for addressing Commerce Clause challenges, and meticulously and dispassionately applies the principles and reasoning from Lopez' in addressing the challenge to the legislation at'issue in this case. Compare Hoffman v. Hunt, 126 F.3d 575, 1997 WL 578787 (4th Cir.1997) (same).
The district court’s careful opinion brings into sharp relief not only the analytical superficiality of the majority’s opinion, but also the majority’s -manifest misreading of the Supreme Court’s historically significant Lopez decision and, therefore, its fundamental misunderstanding of the import of that decision and its implications for the Violence Against Women Act.
Among the more profound of its errors, the majority, in complete disregard of Lopez, does not include even a single sentence — not one — of the “independent evaluation’’ of the effect on interstate commerce of the Violence Against Women Act required under that decision. See Lopez, 514 U.S. at 562, 115 S.Ct. at 1631. Ignoring entirely the overarching change in Commerce Clause analysis wrought by Lopez, the majority merely recites several statements from House and Senate committees on the general problem of violence against women and the effect of that violence on the national economy, together with a sentence from a House Report stating that violence against women substantially affects interstate commerce (incidentally, never mentioning that the Senate, as opposed to the House, did not conclude that such violence substantially affects interstate commerce) and then simply states, without more, that the Act is constitutional.
The majority thus reaches its conclusion that the Violence Against Women Act is a constitutional exercise of the Commerce Clause power through application of a principle of absolute judicial deference to a com *975 mittee finding — precisely what the Supreme Court held in Lopez was no longer appropriate in the review of Commerce Clause challenges to federally enacted statutes, even for findings by the full Congress. See, e.g., Lopez, 514 U.S. at 557 n. 2, 115 S.Ct. at 1629 n. 2 (“[S]imply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so. [Wjhether particular operations affect interstate commerce sufficiently to come under the constitutional power of Congress to regulate them is ultimately a judicial rather than a legislative question, and can be settled finally only by this Court.” (citations and internal quotation marks omitted)).
The majority’s elevation of a committee’s finding not merely to preeminence among the constitutionally relevant considerations, but to a position as dispositive of the constitutional inquiry, is not at all inadvertent; to the contrary, it is quite intentional. In fact, trumpeting a misplaced reliance on United States v. Leshuk, 65 F.3d 1105 (4th Cir.1995), the majority is at pains throughout its opinion to emphasize that it rests its conclusion entirely on the “finding” in the House Report, which it ascribes to the Congress as a whole and then accepts wholly and uncritically:
After four years of hearings and consideration of voluminous testimonial, statistical, and documentary evidence, Congress made an unequivocal and persuasive finding that violence against women substantially affects interstate commerce- Accordingly, whatever one’s doubts as to whether VAWA represents a good policy decision, we can only conclude that Congress’ findings are grounded in a rational basis.
Ante at 968 (emphasis added; citation omitted); see also id. at 966 (describing Leshuk as “rejecting a Lopez challenge to the ‘Comprehensive Drug Abuse Prevention and Control Act’ and beginning and ending our analysis by relying totally upon Congress’s ‘detailed findings’ on the interstate commerce effects ” (emphasis added)); id. at 968 (again comparing majority’s conclusion with that in Leshuk and characterizing Leshuk as a ease where, “[w]ithout further ado we ‘relied upon the[ ] [congressional] findings’ to hold the Commerce Clause authorized Congress to enact this statute” (quoting Leshuk, 65 F.3d at 1112; emphasis added)); id. at 973 (“Although Congressional findings are not required, here we do have abundant legislative findings evidencing that Congress did indeed ensure that the regulated activity substantially affected interstate commerce. As noted above, we relied exclusively on far less detailed Congressional findings to uphold a statute that did not regulate economic activity and had no jurisdictional element.” (Emphasis added; citation to Leshuk omitted)).

The majority’s wholesale deference to a committee finding would at least be understandable if that committee had made extensive findings deserving of deference. However, the majority ultimately sustains the constitutionality of the Act literally on the basis of a single sentence appearing in that committee report, which sentence is, itself, entirely conclúsory.

After properly concluding that it cannot rely upon Congress’ Section 5 findings in support of its Commerce Clause analysis,[1] *976 and after recognizing that the bulk of its recited findings bear only on “the enormity of the problem” of domestic violence against women, not on that problem’s effect on interstate commerce, see ante at 966-68, the majority is left with but a single conclusory sentence in the Report of one House to which to defer in sustaining VAWA under Article I. See ante at 967 (“crimes of violence motivated by gender have a substantial adverse effect on interstate commerce[2] This lone conclusory sentence constitutes the entirety of the “mountain of evidence,” ante at 964, the “reams,” id. at 973, the “voluminous,” id. at 965, the “¡copious,” id. at 966 n. 9, the “detailed,” id. at 966, the “unequivocal,” id. at 968, the “abundant,” id. at 973, and the “persuasive,” id. at 968, congressional findings upon which the majority upholds VAWA. This one sentence is the basis upon which the majority concludes that “it is apparent that Congress took great care to detail its findings and support its conclusions that VAWA was within its commerce authority.” Id. at 973.
It should go without saying that this one sentence is functionally no different from a complete absence of express congressional findings. See Lopez, 514 U.S. at 562, 115 S.Ct. at 1681. This single conclusory sentence no better “enables [the court] to evaluate the legislative judgment that the activity in question substantially affect[s] interstate commerce,” id. at 563,115 S.Ct. at 1632, than would have no statement at all. Rather than the “paradigm of judicial restraint” as the majority asserts, ante at 965 (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 314, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993)), deference to this kind of “finding” is judicial activism merely parading as restraint.
Related to its reflexive acceptance of the committee’s conclusory finding as to the effect on interstate commerce of domestic violence against women, the majority, of necessity, includes scarcely even a reference to the majority opinion in Lopez in reaching its conclusion that the Violence Against Women Act is constitutional. Only after concluding that the Act is constitutional does the majority perfunctorily address the bulk of the Court’s most significant pronouncements on the Commerce Clause. See, e.g., ante at 969 (noting, after holding Act constitutional on the basis of the Committee findings alone, that “nothing in Lopez requires a different result”). Thus, the majority upholds the Violence Against Women Act without so much as a mention of the economic or noneconomic character of the legislation — much less the quite different constitutional analysis required depending upon which type of statute is at issue;[3] the presence or absence of a jurisdictional element that would ensure case-by-ease that the necessary effect on interstate commerce exists; or the consequences of its holding for the “first principles” of divided powers, which the Supreme Court believed so important in the constitutional equation that it began and ended its *977 opinion with a full discussion of them, compare Br. for Intervenor-Appellant United States at 19 (noting that principles of federalism were of “a critical concern to the Court in Lopez ”). Consistent with the majority’s view of Lopez as a fact-specific case of little significance, these pivotal considerations are, and plainly so, consigned to afterthought.
The majority opinion is, it should come as no surprise, categorically inconsistent with our court’s recent carefully written and analyzed opinion in Hoffman v. Hunt, 126 F.3d 575, 586-88, wherein we upheld the Freedom of Access to Clinic Entrances Act of 1994 (“FACE”). Indeed, the majority must resort to miseharaeterization of that opinion in order to avoid the evident inconsistency with its own opinion. The majority states, in transparent legerdemain, that the court in Hoffman reviewed the congressional reports “to uphold” the Freedom of Access to Clinics Act. Ante at 968; see also id. (stating that “similarly” to Leshuk, Hoffman relied wholly on Congress’ findings). However, in Hoffman we did not review the congressional reports to uphold the Act; we merely reviewed them, together with the other factors from Lopez, particularly the close and direct connection of the regulated conduct with an economic activity, in upholding the Act. The difference is obvious. Indeed, this is precisely the significance of Lopez. After Lopez, it is clear that the courts are to undertake an independent review of the relationship between the regulated activity and interstate commerce, not simply to rubber-stamp Congress’ findings as to that relationship, as the majority does.
Similarly, the majority states that “[b]e-cause Congress had made these persuasive findings we concluded [in Hoffman ] that we did not need to ‘pile inference upon inference’ to find a substantial effect on interstate commerce.” Ante at 968. Again, however, we did not reason in this way at all. We did not say that we did not need to pile inference upon inference because Congress had made the findings; rather, and quite differently, we said that the piling of inferences was unnecessary because our own independent determination had revealed that there existed a real and substantial connection between the conduct regulated under FACE and interstate commerce. Again, the difference between Hoffman and the majority opinion, and, more importantly, between the majority opinion and Lopez, is obvious.
Finally, in powerful irony, at the same time that the majority decides the Commerce Clause challenge to VAWA with barely a mention of the analysis carefully laid out by the Supreme Court in Lopez, the majority does not include even a single sentence of discussion of the district court’s exhaustive analysis that it summarily reverses — an analysis which actually is, in contrast to the majority’s opinion, scrupulously faithful not only to Supreme Court precedent, but to our Circuit precedent as well.
In short, the majority opinion reads, as intended, as if Lopez were never decided, holding for our Circuit, explicitly on the authority of Judge Kraviteh’s opinion in United States v. Wright, 117 F.3d 1265, 1269 (11th Cir.1997), and implicitly on the reasoning advocated by the dissenting Justices in Lopez, that “ ‘Lopez did not alter our approach to determining whether a particular statute falls within the scope of Congress’s Commerce Clause authority.’ ” Ante at 969. Indeed, as the majority tacitly acknowledges, with understandable reluctance, it views Lopez, the most significant Commerce Clause decision in more than half a century, as an aberration, a case limited in its reach to section 922(q), of Title 18, of the United States Code. See ante at 969 n. 13 (“[I]t is unsurprising that.‘courts have resisted urgings to extend Lopez beyond § 922(q).’ ” (citations omitted)).
I suspect that, even in its discretion, the Supreme Court would not allow today’s decision to' stand, not only because of the decision’s bold intransigence in the face of the Court’s recent decision, but also because the Commerce Clause challenge to the instant statute pristinely presents the Court with the logical next case in its considered revisitation of the Commerce Clause. Because today’s decision wholly ignores the Supreme Court’s analysis in Lopez and conflicts directly with our recent post-Lopez decision in Hoffman v. Hunt, however, I have every hope that our *978 own court will obviate the need for such further review.
I respectfully dissent.

. For its unexplained conclusion that violence against women has a substantial effect on interstate commerce and therefore is a valid exercise of Congress’ Commerce Clause power, the majority properly does not rely on the findings Congress made to justify VAWA under Section 5 of the Fourteenth Amendment. Thus, the majority distinguishes between the findings made in support of Congress’ exercise of its Section 5 power and the findings made in support of Congress’ exercise of its Commerce Clause power, as does the Department of Justice. Compare Br. of Inter-venor-Appellant United States at 4, 6-8 (detailing congressional findings on the "Impact on the National Economy and Interstate Commerce”), with id. at 9-16 (detailing congressional findings on the "Bias in State Judicial Systems”); compare also id. at 965-970 (arguing in reliance upon findings recited at 4-8 that VAWA is a valid exercise of Congress’ power under the Commerce Clause), with id. at 961-965 (arguing in reliance upon findings recited at 9-16 that VAWA is a valid exercise of Congress’ power under Section 5). It may be, as the Department of Justice contends, that congressional findings that the civil rights of women are being violated bear on the question of whether a statute impermissi-bly- encroaches on traditional state functions. See Br. for Intervenor-Appellant United States at 32 (“An exercise of Commerce Clause power cannot plausibly be invalidated on the basis of federalism concerns where the declared purpose *976 of the statute, supported by extensive legislative evidence, is to secure the civil rights the states have failed to protect.” (emphasis added)). But, as the Department and the majority both recognize, it would be untenable to hold that such findings even bear on, much less largely resolve, the threshold question of whether violence against women has an effect on interstate commerce at all.

. The majority cites to only one other sentence from the four years "of congressional debate in support of its holding, and that sentence from a Senate committee report does not even purport to find that gender-motivated violence substantially affects interstate commerce (although the majority seems to presume that it does). See id. at 967 ("Gender-based crimes and the fear of gender-based crimes restricts movement, reduces employment opportunities, increases health expenditures, and reduces consumer spending, all of which affect interstate commerce and the national economy.”). The sentence speaks more to the effects of such violence on the economy in general than on interstate commerce, in any event.

. So far afield is the majority’s reasoning from that of the Supreme Court in Lopez, that the majority all but holds that the character of legislation as "economic” or "noneconomic" is irrelevant under Lopez. See ante at 972 ("The Lopez Court did not strike down § 922(q) because it regulated non-economic activity. The Court invalidated § 922(q) because neither Congress nor the Government convinced the Court that there was a rational basis for concluding that possession of a gun in a school zone substantially affected interstate commerce.” (citation omitted)); id. ("Even if the regulated activity itself had to have an economic nexus ... ”).